UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEEANNE BERLINSKY,                             ) | |
|                               Plaintiff,    ) | |
|                                   v.    ) | Case No. 1:15-cv-01029-TWP-DML |
| ELI LILLY AND COMPANY,    )  LILLY USA LLC, and    )  JULIE MARTIN, in her individual capacity,    ) | |
|                               Defendants.    ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Eli Lilly and Company, Lilly USA LLC (collectively "Lilly"), and Julie Martin ("Martin") (collectively "the Defendants") (Filing No. 18). Plaintiff LeeAnne Berlinsky's ("Berlinsky") employment with Lilly ended on September 10, 2014, with a "Release Agreement" between Berlinsky and Lilly. The Release Agreement included a confidentiality provision. After Lilly responded to a subpoena from Berlinsky's ex-husband and produced the Release Agreement and other documents, Berlinsky filed this lawsuit for claims of breach of contract against Lilly and defamation against Martin, a member of Lilly's law department. The Defendants filed their Motion to Dismiss, asserting that there is an absolute privilege against liability for responding to a subpoena and there was no breach of the Release Agreement under the contract's provisions. For the following reasons, the Court **GRANTS** the Motion to Dismiss.

## I. BACKGROUND

Lilly is a publically owned pharmaceutical corporation headquartered in Indianapolis, Indiana. Berlinsky was employed by Lilly for almost thirteen years. She has a PhD in healthcare administration, and she was a senior director of sales with Lilly before her employment ended on September 10, 2014. She resides in South Carolina. Defendant Martin is employed by Lilly as an assistant consultant in the legal operations department. (Filing No. 13 at 1–2.)

Berlinsky's separation of employment from Lilly was by mutual agreement of the parties as documented in a signed "Release Agreement," executed on October 3, 2014 (Filing No. 19-1). In the Release Agreement, Berlinsky and Lilly agreed that Berlinsky's last day of employment at Lilly was September 10, 2014. The parties agreed that the "Agreement is motivated solely by the desire to part ways on amicable terms. By carrying out the terms of this Agreement, neither admits any wrongful action or any liability to the other." *Id.* at 1.

The Release Agreement provided for a severance payment to Berlinsky and a release of all claims or potential claims against Lilly. It also contained a confidentiality clause that stated, "[t]hese promises of confidentiality are material terms of this Agreement." (Filing No. 19-1 at 6.) The Release Agreement noted that the parties were entering into an agreement "[i]n consideration of the mutual covenants and conditions set forth in this Agreement." *Id.* at 1.

In the Release Agreement, Berlinsky agreed to cooperate with Lilly in the future should her testimony be necessary for any legal proceedings. The Release Agreement also provided for a smooth transfer of Berlinsky's job responsibilities and the return of Lilly's property. It also stated that the "Agreement contains the entire understanding between the parties relating to the subject matter hereof and may not be amended, supplemented or otherwise modified except by an instrument in writing signed by both parties." (Filing No. 19-1 at 8.)

In September 2015, when she filed her Amended Complaint, Berlinsky had been divorced from her ex-husband for more than four years. Her ex-husband is an attorney in South Carolina. During the four years, Berlinsky's ex-husband repeatedly threatened Berlinsky with family court proceedings to limit her custodial rights of their minor child, increase his visitation rights, and decrease his child support obligations. (Filing No. 13 at 3). Berlinsky has spent more than $200,000.00 in attorney fees defending herself against her ex-husband in family court. *Id.*

In December 2014, Berlinsky's ex-husband learned that she was no longer working for Lilly, so he initiated another proceeding in a South Carolina family court and alleged that Berlinsky had failed to maintain adequate insurance coverage for their minor child. *Id*. In connection with the family court proceeding, Berlinsky's ex-husband served a subpoena on Lilly, requesting Berlinsky's personal employment information. The subpoena directed Lilly to produce Berlinsky's personnel file and answer the following questions:

> [W]hether she resigned or was terminated, the reason for the resignation or termination, any prior disciplinary actions or warnings, and a copy of her severance package. . . . All notes, handwritten or electronic, intercompany e-mails, regular e-mails, memos and/or any and all forms of communication regarding why LeeAnne Berlinsky is no longer employed by Eli Lilly whether for misconduct, alleged misconduct, breach of company policy, breach of industry standards, criminal concerns, if there has been any drug use and/or arrests which may in any way affect cessation of LeeAnne Berlinsky's employment with Eli Lilly regardless of whether she quit or was forced to resign, resigned or was fired.

(Filing No. 13 at 3.) Berlinsky filed a motion to quash the subpoena served on Lilly, and she sent a copy of the motion to quash on January 29, 2015, to Martin in Lilly's legal department.

In response to the subpoena, on behalf of Lilly, Martin asserted objections on the bases that the subpoena sought documents protected from disclosure by the attorney-client privilege and sought information that was not sufficiently tailored to the issues as Lilly understood them and because Lilly was not subject to the subpoena power of an out-of-state court. Along with the

3

objections, Martin produced Berlinsky's "personal history" folder, which contained the Release Agreement. Martin provided the subpoena response and folder, on behalf of Lilly, to Berlinsky's ex-husband on February 23, 2015. *Id.* at 4.

After Berlinsky's ex-husband received Lilly's subpoena response from Martin, he sent a follow-up letter to Martin on February 24, 2015, asserting that there were several documents missing from Lilly's response to the subpoena, specifically he requested any documents that led to the formation of the Release Agreement, documentation of the reason for Berlinsky's termination, and documents indicating why Berlinsky was no longer working for Lilly. Because Berlinsky's counsel determined that these additional documents were not relevant to the family court proceeding, her counsel notified Martin on February 25, 2015, that if any additional personal and confidential information about Berlinsky was released to Berlinsky's ex-husband as a result of the follow-up letter, Berlinsky would consider the confidentiality provision of the Release Agreement breached.

On March 6, 2015, Lilly asserted that the subpoena sought "confidential personal information that is not sufficiently tailored to the issues Lilly understands to be at issue" ([Filing No. 13 at 5](#)); however, Martin produced additional employment documents regarding Berlinsky through outside counsel. *Id*.

While the Release Agreement signed by Lilly on October 3, 2014, stated that it contained the entire understanding of the parties and that Berlinsky's employment ended through mutual agreement, Lilly produced a letter pre-dating the Release Agreement that indicated Berlinsky was being separated for "misconduct as a member of management." This letter, which pre-dated the Release Agreement, contained information that contradicted the parties' agreement that Berlinsky's termination was by mutual agreement. *Id.* Berlinsky's ex-husband is using this earlier

letter produced by Martin against Berlinsky in the family court in South Carolina to try to alter the existing child custody arrangements and support order as well as to injure Berlinsky's professional reputation.  *Id.*

Berlinsky contends that Lilly and Martin were or should have been aware that her ex-husband had previously tried to accumulate confidential information about her as Berlinsky's ex-husband previously served Lilly with twelve separate subpoenas and then withdrew the subpoenas after Berlinsky's former attorney challenged the subpoenas' legality and relevance.  Berlinsky also contends that Martin acted outside the scope of her authority and contrary to Lilly's standard protocols when she produced the additional documents to Berlinsky's ex-husband, which included the letter that pre-dated the Release Agreement and that contradicted the terms of the Release Agreement.  ([Filing No. 13 at 5](#)–6.)

By letter dated March 12, 2015, Berlinsky informed Lilly that she considered its conduct a breach of the Release Agreement, and she never received a response from Lilly.  *Id.* at 6.  On September 3, 2015, Berlinsky filed her Amended Complaint asserting a breach of contract claim against Lilly and a defamation claim against Martin in her individual capacity.  On September 28, 2015, Defendants filed their Motion to Dismiss, asserting among other arguments that Berlinsky's claims must be dismissed because Lilly and Martin enjoy an absolute privilege against liability when responding to a subpoena.

## II.　**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*,

550 F.3d 632, 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> [T]he record under 12(b)(6) is limited to the language of the complaint and to those matters of which the court may take judicial notice. The complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss. By the same token, the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence.

*Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987) (citation omitted). However, "[courts] consider documents attached to the complaint as part of the complaint itself.

Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citations omitted). Additionally, the court may consider documents that are referred to in the complaint and that are concededly authentic and central to the plaintiff's claim. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012). When a party attaches exhibits to its complaint and incorporates the exhibits into the pleadings, if there are contradictions between the exhibits and the complaint, the exhibits generally will control. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

### III.  DISCUSSION

Lilly and Martin ask the Court to dismiss with prejudice both the defamation claim against Martin and the breach of contract claim against Lilly. The Court will address each claim in turn.

**A.     Defamation Claim against Martin**

The Defendants assert that Berlinsky's defamation claim fails as a matter of law because there is an absolute privilege against defamation liability when responding to a subpoena. They explain that Martin is a member of Lilly's legal department, and all of her conduct as alleged in the Amended Complaint was in connection with responding to the subpoena directing the production of documents. Martin did not create new documents, but rather, only produced already-existing documents from Lilly's files. She did not provide "new" information to Berlinsky's ex-husband. In support of their argument for an absolute privilege, the Defendants point to case law from the Indiana Supreme Court.

> Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements. The reason upon which the rule is founded is the necessity of preserving the due administration of justice, by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims.

*Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008) (citations and quotation marks omitted). *See also Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 376–77 (7th Cir. 2010) (Indiana courts favor a liberal rule regarding this absolute privilege). The Defendants also quote Seventh Circuit case law specifically on point regarding subpoenas; "Defamation based on material contained in a response to a subpoena, as in other statements made in a judicial proceeding, is absolutely privileged." *United States Dep't of Educ. v. NCAA*, 481 F.3d 936, 939 (7th Cir. 2007) (citations omitted).

Responding to Defendants' argument for an absolute privilege, Berlinsky acknowledges that responses to a subpoena are privileged and that she did not allege that Lilly should not have responded to the subpoena. She asserts, however, that the focus of her Amended Complaint was on the actions taken by Martin after the initial subpoena response. She asserts that Martin's wrongful conduct giving rise to the defamation claim occurred when Martin responded to Berlinsky's ex-husband's follow-up letter, demanding additional documents. Berlinsky explains,

> The crux of Plaintiff's complaint is that when Defendant Lilly voluntarily responded to a subsequent letter from the attorney who had issued the subpoena and provided a letter that indicated Plaintiff had been terminated for misconduct, Defendant Lilly breached the Release Agreement and Defendant Martin defamed Plaintiff by providing false information which had been superseded by the Release Agreement.

([Filing No. 20 at 2](#).)

Berlinsky portrays her defamation claim against Martin as arising from a discretionary, separate response by Martin to a third-party letter. Berlinsky then goes on to explain the process for challenging the adequacy of a response to a subpoena and infers that Lilly and Martin should have required Berlinsky's ex-husband to initiate contempt proceedings before they cooperated with further document production in response to the subpoena.

The Defendants reply to Berlinsky's response by pointing out that Berlinsky admitted Lilly acted appropriately when it responded to the subpoena. Then they assert that Berlinsky's argument

8

about liability for actions after the initial subpoena response is unavailing because "Lilly's 'voluntary response to a subsequent letter' was undeniably part of Lilly's response to the subpoena." ([Filing No. 21 at 2](Filing No. 21 at 2).)

Lilly provided initial objections and responses to the subpoena with a production of documents. The subpoena discovery process continued when the issuing party challenged Lilly's initial response and objections, and the opponents resolved their issues through discussion and additional document production. "All of that was a part of the subpoena response. It was not some independent response to a separate third-party inquiry as [Berlinsky] now tries to cast it." *Id.*

Defendants then describe the litigation and discovery process: the issuing party issues a subpoena or discovery request, the receiving party responds and objects initially, the issuing party then challenges the response and objections, and the parties subsequently resolve those issues. Contempt proceedings are a last resort that parties have a duty to try to avoid. A party's duty is to respond to the subpoena with appropriate objections and then work in good faith with the party issuing the subpoena to address any issues raised regarding the response and objections.

Upon review of the allegations in the Amended Complaint, it is clear that all of the conduct undertaken by Martin and Lilly was in direct response to the subpoena served on Lilly by Berlinsky's ex-husband. Lilly had to respond to the subpoena. The subsequent, additional document production was part of the subpoena response process. Defendants were simply fulfilling Lilly's duty to try to resolve a discovery dispute before seeking the court's intervention or forcing a motion to compel or contempt proceedings. Because Martin's actions were in response to a subpoena and because there is an absolute privilege for Martin's subpoena response, the Motion to Dismiss is **GRANTED** as to the claim for defamation against Martin.

B.     <u>**Breach of Contract Claim against Lilly**</u>

Berlinsky's breach of contract claim against Lilly focusses on Lilly's production of the Release Agreement and subsequent production of the contradictory personnel file letter to Berlinsky's ex-husband. The breach of contract claim is based on paragraphs 11 and 15—what Berlinsky calls the "confidentiality clauses"—of the Release Agreement.

Paragraph 11 of the Release Agreement states,

> Lilly's U.S. Human Resources component agrees to follow its standard practice in responding to inquiries from a third party (other than a government entity) about Dr. Berlinsky's employment at Lilly regarding her dates of employment, last position held, and, if requested by Dr. Berlinsky, her final annual base salary. Dr. Berlinsky understands that she will need to call HR Direct at 1-877-676-4745 to obtain the instructions to access the automated process for employment and wage verifications. She also understands she will need to provide additional information to the third party needing her information and to THE WORK NUMBER® in order to authorize release by THE WORK NUMBER® to such third party. To any third party contacting THE WORK NUMBER® for employment verification, THE WORK NUMBER® will provide the verifier with Dr. Berlinsky's dates of employment, last position held, and, if appropriately authorized by Dr. Berlinsky, her final annual base salary.

([Filing No. 19-1 at 4](#)–5.)

Paragraph 15 of the Release Agreement provides,

> Dr. Berlinsky agrees that the terms of this Agreement are confidential, although any letter to be delivered in the form set forth in paragraph 6 of this Agreement is not confidential. Dr. Berlinsky agrees that she has not disclosed and will not disclose, directly or indirectly, the existence or contents of this Agreement, including the fact of or the amount of payment, or any and all terms contained in this Agreement, except to (a) her attorney, financial advisor, and/or spouse/domestic partner (in each case, if any); (b) any person as may be necessary to effect the terms of this Agreement; (c) any person as may be required by law or legal process, but no more than is necessary for the limited purposes determined to be required by the Court having jurisdiction or no more than is required by state or federal taxing authorities; (d) a governmental agency referenced in paragraph 6 of this Agreement, in connection with a potential or actual charge filed against Lilly or (e) as may be necessary in a proceeding to enforce the terms of the Agreement. Nothing in this Agreement shall prohibit or restrict Dr. Berlinsky from participating, cooperating, or testifying in any action, investigation, or proceeding with, or providing relevant and truthful information to, any court, governmental agency or legislative body, including but not limited to the IRS, any self-regulatory organization and/or pursuant to the Sarbanes-Oxley Act; provided that, to the extent

10

> permitted by law, upon receipt of any subpoena, court order or other legal process compelling the disclosure of any such information or documents, including this Agreement, Dr. Berlinsky gives ten (10) days' written notice to Lilly prior to responding to such subpoena, court order or other legal process so as to permit Lilly to protect its interests in confidentiality to the fullest extent possible. This notice requirement does not, however, apply to Dr. Berlinsky's non-waived rights related to her filing of or cooperation in the investigation of any charge of the type referenced in paragraph 6 of this Agreement. Dr. Berlinsky agrees that in any communication she has other than with her attorney(s), financial advisor(s) and spouse/domestic partner (if any) regarding her departure from Lilly, she shall state only that she left Lilly employment by mutual agreement of the parties unless that communication is in connection with her participation, cooperation, or testimony in any action, investigation, or proceeding with, or her provision of relevant and truthful information to any court, governmental agency or legislative body. **These promises of confidentiality are material terms of this Agreement.**

([Filing No. 19-1 at 6](#) (emphasis in original).)

Lilly argues that paragraph 11 of the Release Agreement does not specify anything Lilly could or could not do in response to a subpoena. It merely indicates that Lilly's human resources department would follow its standard practice in responding to third-party employment reference inquiries it received about Berlinsky. Paragraph 11 contains no confidentiality obligations for Lilly. Rather, it states what information Lilly will provide in response to any third-party inquiries about Berlinsky's employment at Lilly. The differences between a subpoena and an employment reference inquiry are clear and significant. Lilly had a legal obligation to respond to a subpoena; on the other hand, unlike a subpoena, an employment reference inquiry calls for a discretionary response. A paragraph 11 third-party inquiry is not the same as a court order subpoena requiring production of documents to which Lilly had a legal obligation to respond. Furthermore, paragraph 11 pertains to employment inquiries made to Lilly's human resources department, not to subpoenas directed to Lilly's legal department. Thus, Lilly argues that it would be impossible to breach the Release Agreement under paragraph 11 by simply responding to a subpoena.

Lilly asserts that the plain language of paragraph 15 of the Release Agreement established confidentiality obligations for Berlinsky only. It did not set confidentiality obligations for Lilly. Paragraph 15 also provided some exceptions to the confidentiality of the Release Agreement, listing circumstances where Berlinsky could disclose the contract. One such circumstance where Berlinsky could disclose the Release Agreement was in the context of a legal proceeding. Lilly explains that under the plain language of the contract, Lilly was not bound by the same confidentiality limitations, but even if it were, the exception to confidentiality in a legal proceeding would have protected Lilly. Paragraph 15 unequivocally allows compliance with legal obligations to disclose information about the Release Agreement, and it does not prohibit a party from responding to a subpoena. Therefore, Lilly argues, it would be impossible to breach the Release Agreement under paragraph 15 by responding to a subpoena, and thus, dismissal is appropriate.

Berlinsky responds that Lilly should not have responded to the follow-up letter from her ex-husband and should have forced him to initiate contempt proceedings against Lilly. She asserts that "standard practices" should have been followed (noted in paragraph 11) when responding to a third-party request for information. She also argues that the Release Agreement stated that it contained the "entire understanding between the parties" and it could not be amended, supplemented, or modified except by a written agreement, but Lilly modified the Release Agreement when it produced the personnel file letter that contradicted the contract.

The Defendants reply that paragraph 11 and its "standard practices" language do not apply because the conduct at issue was a response to a subpoena, not a response to a third-party employment reference inquiry. Everything that Lilly and Martin did was a direct result of the subpoena.

12

Regarding Berlinsky's argument about impermissibly modifying the Release Agreement by producing an earlier-existing letter, the Defendants assert that the Release Agreement did not require Lilly to block the production of documents that were responsive to a subpoena, and it did not require Lilly to destroy or alter documents that existed before the Release Agreement was created and signed. No provision in the Release Agreement required the destruction or modification of documents already in Berlinsky's personnel file, and no provision prohibited their production. Therefore, Lilly argues, it was not in breach of the Release Agreement when it retained documents that existed at the time of the agreement even to the extent that such documents were inconsistent with the way the parties agreed to portray the ending of Berlinsky's employment with Lilly in the Release Agreement. Thus, when Lilly received the subpoena to produce documents and such documents were in existence and responsive, Lilly was not in breach when it complied with its legal obligation to produce responsive documents.

The Defendants' arguments regarding the breach of contract claim are well taken. A reading of the plain language of the Release Agreement does not impose upon Lilly the duties that Berlinsky now asserts. The terms of the parties' contract provided obligations specific to Lilly and other obligations specific to Berlinsky as well as some obligations applicable to both Lilly and Berlinsky. If the Court were to follow Berlinsky's logic regarding the mutuality of the terms of the Release Agreement where all obligations apply to both parties, Berlinsky would be required to pay Lilly a severance package, Lilly could not seek future employment with Lilly, Lilly would receive Berlinsky's vested retirement benefits, and Lilly could not solicit Lilly employees to work for its competitors for a period of twelve months. Of course, this is not an accurate interpretation of the Release Agreement. Some of the provisions of the Release Agreement applied to Berlinsky alone; others applied to Lilly.

Unfortunately for Berlinsky, the contract did not provide provisions that prohibited Lilly from responding to the subpoena in question. No provisions required Lilly to force an opponent to initiate contempt proceedings before cooperating in discovery. And nothing in the Release Agreement required Lilly to destroy or modify the documents that existed in Berlinsky's personnel file. The conduct complained of is not actionable; Lilly simply fulfilled its legal obligation to respond to a subpoena by producing responsive documents. A breach of contract claim cannot arise under these circumstances. Thus, dismissal is appropriate.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Lilly and Martin's Motion to Dismiss the Amended Complaint ([Filing No. 18](#)) is **GRANTED**. Berlinsky's Amended Complaint is dismissed with prejudice. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 9/19/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Tae K. Sture
STURE LEGAL SERVICES LLC
tae@sturelaw.com

Nancy Bloodgood
FOSTER LAW FIRM LLC
nbloodgood@fosterfoster.com

Craig M. Borowski
FAEGRE BAKER DANIELS LLP
craig.borowski@faegrebd.com

Ellen E. Boshkoff
FAEGRE BAKER DANIELS LLP
ellen.boshkoff@faegrebd.com